1   **KAPLAN, FOX & KILSHEIMER, LLP**
    Laurence D. King (SBN 206423)
2   Linda M. Fong (SBN 124232)
    350 Sansome Street, Suite 400
3   San Francisco, CA 94104
    Telephone: (415) 772-4700
4   Fax: (415) 772-4707
    Email: lking@kaplanfox.com
5          lfong@kaplanfox.com

6   **KAPLAN, FOX & KILSHEIMER, LLP**
    Robert J. Kaplan
7   Linda P. Nussbaum
    John D. Radice
8   850 Third Avenue, 14th Floor
    New York, NY 10022
9   Telephone: (212) 687-1980
    Fax: (212) 687-7714
10  Email: rkaplan@kaplanfox.com
           lnussbaum@kaplanfox.com'

11

12  *Attorneys for Plaintiffs Acutron, Inc.*

13  [Additional Counsel Appear on Signature Page]

14              **UNITED STATES DISTRICT COURT**

15            **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 16   ACUTRON, INC., Individually and on Behalf of all Others Similarly Situated, | )  Civil Action No. _____ |
| 17 | ) |
|        Plaintiff, | ) |
| 18                    v. | ) **CLASS ACTION COMPLAINT** |
| 19   MATSON NAVIGATION COMPANY, INC., ALEXANDER & BALDWIN, INC, and HORIZON LINES, LLC, | ) |
| 20 | ) **JURY TRIAL DEMANDED** |
| 21   Defendants. | ) |
| 22 | ) |
| 23 | ) |

1    Plaintiff, individually and on behalf of a class of all those similarly situated, brings this

2    action for damages and injunctive relief under the antitrust laws of the United States against

3    defendants, demanding a trial by jury, and complaining and alleging as follows:

4                                    **Nature of The Case**

5    1.    This lawsuit is brought as a class action on behalf of all individuals and entities

6    who purchased Domestic Noncontiguous Off Shore Trades Services (defined herein) for trade

7    routes between Hawaii and the continental United States, or its territories and possessions (the

8    "Hawaii trade routes") (collectively, "Hawaii shipping services"), directly from defendants,

9    their predecessors, parents, or controlled subsidiaries and affiliates from at least as early as May

10   23, 2004, or earlier.  Plaintiff alleges that during the Class Period (defined herein) the

11   defendants conspired to allocate markets or engage in other anticompetitive conduct concerning

12   Hawaii shipping services.  Because of defendants' unlawful conduct, plaintiff and other class

13   members paid artificially inflated prices for Hawaii shipping services, as a result, have suffered

14   antitrust injury to their business or property.

15   2.    Specifically, this case focuses on defendants' unlawful agreements to, *inter alia*,

16   increase and fix fuel and other surcharges (which account for approximately 20% of

17   defendants' revenue), and decrease capacity to bolster prices.

18   3.    Fuel surcharges have moved in lockstep since 1999, with defendants Matson and

19   Horizon, by agreement, imposing an identical or nearly identical surcharges.  However, the

20   lockstep changes in fuel surcharges, which are calculated as a percentage of revenue, make no

21   economic sense as defendants have different utilization rates and cost structures.  The lockstep

22   nature of the fuel surcharges, combined with defendants' differing cost structures, belies any

23   argument that the surcharges are the result of anything other than defendants' collusion.

24   4.    Similarly, defendants had unique control over capacity in the Hawaii market and

25   agreed to carry each other's extra cargo at discount prices.  Absent this agreement, each

26   defendant would have needed to increase its own capacity, and that increased capacity would

27   have placed downward pressure on prices.

28

                                          1

CLASS ACTION COMPLAINT

**Jurisdiction and Venue**

5.     This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against defendants for the injuries sustained by plaintiff and the members of the class by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1.

6.     This action is also instituted to secure injunctive relief against defendants to prevent them from further violations of Section 1 of the Sherman Act, as hereinafter alleged.

7.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

8.     Venue is found in this district pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C. § 1391(b), (c) and (d).  Venue is proper in this judicial district because during the Class Period one or more of the defendants resided, transacted business, was found, or had agents in this district, and because a substantial part of the events giving rise to plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district.

9.     Defendants, on information and belief, maintain offices, have agents, transact business, or are found within this judicial district.

**Plaintiff**

10.     Plaintiff Acutron, Inc. was at all relevant times a Hawaii corporation with its principal place of business in Honolulu, Hawaii.  During the relevant time period, plaintiff purchased Hawaii shipping services.  The prices paid for Hawaii shipping services that plaintiff paid to defendants were, as a result of the conspiracy herein alleged, higher than they otherwise would have been, and as a result of the alleged conspiracy, plaintiff was injured in its business and property by reason of the antitrust violations alleged herein.

**Defendants**

11.     Defendant Matson Navigation Company, Inc. ("Matson") is a Hawaiian corporation with its principal place of business in Oakland, California.  Matson is a wholly-owned subsidiary of Defendant Alexander & Baldwin, Inc.  Matson is a principal provider of

2

Hawaii shipping services.  Defendant Matson marketed and/or sold Hawaii shipping services in this district and the United States and its territories and possessions during the Class Period.

12.    Defendant Alexander & Baldwin, Inc. ("A&B") is a Hawaiian corporation with its principal place of business in Honolulu, Hawaii.  A&B is a multi-industry corporation whose ocean transportation operations are conducted by its wholly-owned subsidiary Matson. By and through Matson, A&B sold Hawaii shipping services in this district and the United States and its territories and possessions during the Class Period.

13.    Defendant Horizon Lines, LLC ("Horizon"), is a Delaware limited liability company with its principal place of business in Charlotte, North Carolina.   Horizon is a wholly owned operating subsidiary of Horizon Lines, Inc., a Delaware corporation with its principal place of business in Charlotte, North Carolina.  Defendant Horizon marketed and/or sold Hawaii shipping services in this district and the United States and its territories and possessions during the Class Period.

14.    Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

15.    Various other persons, firms and corporations, not named as defendants in this complaint, have participated as co-conspirators with defendants in the violations alleged herein, and aided, abetted and performed acts and made statements in furtherance of the conspiracy.

### The Jones Act

16.    For purposes of this complaint, "Domestic Noncontiguous Off Shore Trades Services" are merchandise shipping services, primarily by container and/or barge, in the coastwise (*i.e.*, domestic) trade.  These services are governed by the Merchant Marine Act of 1920, commonly referred to as the "Jones Act." 46 U.S.C. § 100 *et. seq.*

17.    The coastwise trade includes the transportation of merchandise between Hawaii and points in the United States and/or most of its island territories and possessions. *See* 46

CLASS ACTION COMPLAINT

1    U.S.C. § 55101 (extending coastwise laws to island territories and possessions except

2    American Samoa, the Northern Mariana Islands, and the U.S. Virgin Islands).

3        18.    The Jones Act is a protectionist statute that prohibits any goods "transported by

4    water, or by land and water . . . between points in the United States . . . either directly or via a

5    foreign port," from being shipped unless the vessel "is wholly owned by citizens of the United

6    States for purposes of engaging in the coastwide trade" and has been issued a "certificate of

7    documentation" or is exempt from documentation. 46 U.S.C. § 55102.

8        19.    The coastwise trade laws—*i.e.*, the Jones Act—grant an exclusive privilege to

9    certain U.S. owned vessels to engage in the coasting trade concerning shipment of merchandise

10   to or from U.S. territories, possessions, or non-contiguous States, including shipments to and

11   from Hawaii.

12       20.    The Jones Act seeks "to protect American shipping industry already engaged in

13   the coastwise trade." *Marine Carriers Corp. v. Fowler*, 429 F.2d 702, 708 (2d Cir. 1970).

14       21.    The Jones Act's restriction on the carriage of domestic cargoes to U.S.-owned

15   ships, combined with the relatively small size of these trade routes, results in an oligopolistic

16   markets where only a very small number of carriers serve any route.

17       22.    Collusion, market sharing, allocation of customers, restriction of capacity and

18   other anticompetitive conduct is illegal under the Sherman Act, subject to certain exemptions

19   not applicable here. *See* 46 U.S.C. § 40307 (listing exemptions).

20                    **The Hawaii Trade Routes Market**

21                        **Violations Alleged**

22       23.    The Jones Act limits competition in the coastwise market for shipping such that

23   a few carriers dominate these trade lanes. As one analyst explained: "The U.S. Jones Act trade

24   lanes have historically been oligopolies."

25       24.    There are numerous barriers to entry for companies attempting to enter the

26   Hawaii trade routes market. Competition is limited by, *inter alia*: the Jones Act; substantial

27   upfront costs; and a substantial lag time between deciding to enter and actually being able to

28   enter because of the need for U.S. built ships—which are limited in supply and take time to

4

1  construct—and adequate port facilities. Thus, competitors or potential market entrants lack the

2  capacity to increase output in the short run.

3       25.    As defendant Horizon explained in its 2007 form 10-K: "Given the limited

4  number of existing Jones Act qualified vessels, the high capital investment and long delivery

5  lead times associated with building a new containership in the U.S., the substantial investment

6  required in infrastructure and the need to develop a broad base of customer relationships, the

7  markets in which we operate have been less vulnerable to over capacity and volatility than

8  international shipping markets."

9       26.    The high degree of concentration in the industry makes it easier for competitors

10  to engage in anticompetitive conduct because fewer, repeat providers control the vast majority

11  of any Jones Act shipping route.

12       27.    In the Hawaii trade routes, for example, defendants Horizon and Matson account

13  for nearly 100 percent of the market.

14       28.    Hawaii shipping services are highly fungible, such that purchasers decide to

15  purchase and competitors compete largely based on price.

16       29.    Though fungible between Jones Act carriers, Hawaii shipping services are not

17  readily substitutable for by other methods of transportation. For example, shipping heavy,

18  bulky goods via air freight is prohibitively expensive, and there obviously are no road or rail

19  routes between Hawaii and the mainland United States.

20       30.    Price fixing and market allocation is especially pernicious within a highly

21  concentrated, fungible market for which adequate substitutes do not exist, as here in the Hawaii

22  trade routes market.

23       31.    The structure of the Hawaii trade routes market is such as to make secret price-

24  fixing feasible. The market is highly concentrated with few sellers, almost all of whom are the

25  defendants. Further, Domestic Noncontiguous Off Shore Trades Services are a highly

26  standardized product. Demand is inelastic and there are barriers to entry in the form of

27  expensive machinery and economies of scale.

28

CLASS ACTION COMPLAINT

32.     Anti-competitive agreements in Hawaii trade routes can take various forms, including: market allocation; restricting supply; and bunker/fuel and other surcharges.

33.     Beginning at least as early as May 23, 2004 or earlier, the exact dates being unknown to plaintiff, defendants engaged in a continuing agreement, understanding and conspiracy in restraint of trade to restrict competition, allocate customers, restrict capacity, and otherwise engage in anticompetitive conduct to allocate the market for or engage in anticompetitive conduct concerning the Hawaii shipping services and/or engaged in market allocation of those services in the United States, its territories and possessions in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

34.     The contract, combination and conspiracy consisted of a continuing agreement, understanding and concert of action between the defendants, the substantial terms of which were to allocate the market for or engage in anticompetitive conduct concerning Hawaii shipping services in the United States, its territories and possessions.

35.     In formulating and effectuating the aforesaid contract, combination or conspiracy, defendants did those things that they unlawfully combined and conspired to do, including, among other things:

        a.     agreeing to allocate the market and/or customers for Hawaii shipping services;

        b.     exchanging information on customers and capacity and;

        c.     monitoring and implementation of the arrangements among cartel members.

36.     The activities described above have been engaged in by defendants for the purpose of effectuating the unlawful agreements concerning market allocation, restricting capacity, and other anticompetitive conduct concerning for Hawaii shipping services.

37.     Any Jones Act exemptions are not applicable here.

### The Hawaii Trade Routes

38.     The Hawaii trade routes market is distinct from other Jones Act trade routes.

6

39.    The Hawaii trade routes market is dominated by defendants Matson and Horizon.

40.    Defendants have access to industry data (including data from the Port Import Export Reporting Service) concerning the Hawaii trade routes market and participate in trade associations (like the Maritime Cabotage Task Force) which facilitates efficient monitoring of defendants' collusive agreements.

### a.    Fuel Surcharges

41.    In 1999 or earlier, defendants began imposing fuel surcharges, and those surcharges have grown over time.  The surcharges are calculated as a percentage of revenue.

42.    Defendants agreed that they would set fuel surcharges at identical rates, rates that were divorced from any precompetitive or lawful economic rationale.  The surcharges are reflected in the below chart:

**Hawaiian Ocean Shipping Rate Increases  1999 to 2007**

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|
| Matson Navigation | 10/1999 | 1 to 1.75% | | |
| *Horizon Lines* | 10/1999 | 1 to 1.75% | | |
| | | | | |
| Matson Navigation | 2/2000 | 1.75 to 2.25% | | |
| *Horizon Lines* | 2/2000 | 1.75 to 2.25% | | |

CLASS ACTION COMPLAINT

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|
| Matson Navigation | 4/2000 | 2.25 to 3.25% | | |
| *Horizon Lines* | 4/2000 | 2.25 to 3.25% | | |
| Matson Navigation | 10/2000 | 3.25 to 4.25% | | |
| *Horizon Lines* | 10/2000 | 3.25 to 4.25% | | |
| Matson Navigation | 11/2001 | 4.25 to 3.25% | | |
| *Horizon Lines* | 11/2001 | 4.25 to 3.25% | | |
| Matson Navigation | 5/2002 | 3.25 to 4.75% | | |
| *Horizon Lines* | 5/2002 | 3.25 to 4.75% | | |

8

CLASS ACTION COMPLAINT

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|
| Matson Navigation | 10/2002 | 4.75 to 6.00% | | |
| *Horizon Lines* | 10/2002 | 4.75 to 6.00% | | |
| Matson Navigation | 3/2003 | 6.00 to 7.50% | | |
| *Horizon Lines* | 3/2003 | 6.00 to 7.50% | | |
| Matson Navigation | 5/2004 | 7.5 to 8% | | |
| *Horizon Lines* | 5/2004 | 7.5 to 8% | | |
| Matson Navigation | 6/2004 | 8 to 8.8% | | |
| *Horizon Lines* | 6/2004 | 8 to 8.8% | | |

CLASS ACTION COMPLAINT

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|
| Matson Navigation | 102004 | 8.8 to 9.2% | | |
| *Horizon Lines* | 10/2004 | 8.8 to 9.2% | | |
| Matson Navigation | 4/2005 | 9.2 to 10.5% | | |
| *Horizon Lines* | 4/2005 | 9.2 to 10.5% | | |
| Matson Navigation | 7/2005 | 10.5 to 11.5% | | |
| *Horizon Lines* | 7/2005 | 10.5 to 11.5% | | |
| Matson Navigation | 10/2005 | 11.5 to 13% | | |
| *Horizon Lines* | 10/2005 | 11.5 to 13% | | |
| Matson | 11/2005 | | $125/Westbound | $60/Westbound |

10

CLASS ACTION COMPLAINT

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|
| Navigation | | | $75.Eastbound Approx. 3.9% | $30/Eastbound Approx. 22% |
| *Horizon Lines* | 11/2005 | | $125/Westbound $75.Eastbound Approx. 3.9% | $60/Westbound $30/Eastbound Approx. 22% |
| Matson Navigation | 12/2005 | 13 to 15% | | |
| *Horizon Lines* | 12/2005 | 13 to 15% | | |
| Matson Navigation | 3/2006 | 15 to 18.5% | | |
| *Horizon Lines* | 3/2006 | 15 to 18.5% | | |
| Matson Navigation | 5/2006 | 18.5 to 21.25% | | |
| *Horizon Lines* | 5/2006 | 18.5 to 21.25% | | |
| Matson | 9/2006 | 21.25 to | | |

11

CLASS ACTION COMPLAINT

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|
| Navigation | | 19.75% | | |
| *Horizon Lines* | 9/2006 | 21.25 to 19.75% | | |
| Matson Navigation | 10/2006 | 19.75 to 18.75% | | |
| *Horizon Lines* | 10/2006 | 19.75 to 18.75% | | |
| Matson Navigation | 11/2006 | | $100/Westbound $50 Eastbound Approx. 3.3% | $150/Westbound $75/Eastboun Approx. 45-46% |
| *Horizon Lines* | 11/2006 | | $100/Westbound $50 Eastbound Approx. 3.3% | $150/Westbound $75/Eastboun Approx. 45-46% |
| Matson Navigation | 1/2007 | 18.75 to 17.5% | | |
| *Horizon Lines* | 1/2007 | 18.75 to 17.5% | | |

CLASS ACTION COMPLAINT

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|
| Matson Navigation | 2/2007 | 17.5 to 19.5% | | |
| Horizon Lines | 2/2007 | 17.5 to 19.5% | | |
| Matson Navigation | 4/2007 | 19.5 to 20.75% | | |
| Horizon Lines | 4/2007 | 19.5 to 20.75% | | |
| Matson Navigation | 5/2007 | 20.75 to 22.5% | | |
| Horizon Lines | 5/2007 | 20.75 to 22.5% | | |
| Matson Navigation | 7/2007 | 22.5 to 24% | | |
| Horizon Lines | 7/2007 | 22.5 to 24% | | |
| Matson | 10/2007 | 24 to 26% | | |

13

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|
| Navigation | | | | |
| *Horizon Lines* | 10/2007 | 24 to 26% | | |
| | | | | |
| Matson Navigation | 11/2007 | 26 to 29% | | |
| *Horizon Lines* | 11/2007 | 26 to 29% | | |
| | | | | |

43.  These lockstep surcharges calculated as a percentage of revenue make no economic sense because defendants have different cost structures and utilization rates. For example, defendants Horizon and Matson have different operating expenses and margins. If defendants' surcharges were a reflection of economics rather than collusion, the surcharges would not have moved in lockstep when defendants' margins were different.

**b.  Artificial Capacity Limitations**

44.  Defendants agreed to limit capacity and thereby increase rates to supracompetitive levels.

45.  Defendants effectuated this agreement by carrying—at vastly discounted rates— each other's containers. For example, when Horizon had more customers than it could handle on its ships, Matson carried containers that had been shipped with Horizon, and *vice versa*.

CLASS ACTION COMPLAINT

46.     Absent this agreement, the only way that either competitor would have been able to maintain its current level of business would have been by adding capacity. This additional capacity, however, would have had the (procompetitive) effect of lowering prices.

47.     Defendants are collaborating—not competing—with each other to stabilize the amount of shipping services available, and thereby maintain supracompetitive prices

48.     Unsurprisingly, the cost of shipping to Hawaii has risen substantially in recent years, in part due to defendants' collusive anticompetitive agreements.

### Government Antitrust Investigation

49.     On April 17, 2008, it was disclosed that the United States Department of Justice began an investigation into the Domestic Noncontiguous Shore Trades Services industry in a similar market: the trade routes between Puerto Rico and the continental United States. On or about April 17, defendants Horizon and Matson both disclosed that either warrants to search their premises had been issued or that they had been subpoenaed in connection with the DOJ's investigation. The investigation is not limited to the Puerto Rico market, and defendant Matson is being investigated by the DOJ even though it has no presence in the Puerto Rico market.

50.     To obtain search warrants the United States had to have probable cause, accepted by a court, to believe that it would obtain evidence of an antitrust violation from the search warrant – that is, the United States had to have evidence sufficient to warrant a person of reasonable caution to believe that raiding the offices of a seemingly lawful business would uncover evidence of antitrust violations and the court had to have examined and accepted that evidence. That belief, which was recounted in sworn affidavit or by testimony, must be grounded on reasonably trustworthy information.

### Class Action Allegations

51.     Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rule 23(a) and (b)(2) & (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following class:

> All persons (excluding governmental entities, defendants, co-conspirators, other sellers or providers of Hawaii shipping

services, and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing) who purchased Hawaii shipping services directly from any of the defendants, or any present or former parent, subsidiary or affiliate thereof, at any time during the period from at least May 23, 2004, or earlier, until the effects of defendants' anticompetitive conduct cease.

52.    Plaintiff believes that there are hundreds or thousands of class members as above described, the exact number and their identities being known by defendants.

53.    The class is so numerous and geographically dispersed that joinder of all members is impracticable.

54.    There are questions of law and fact common to the class, which questions relate to the existence of the conspiracy alleged, and the type and common pattern of injury sustained as a result thereof, including, but not limited to:

a.    Whether defendants engaged in a combination and conspiracy among themselves to allocate the market for or engage in other anticompetitive conduct concerning Hawaii shipping services.

b.    The identity of the participants in the conspiracy;

c.    The duration of the conspiracy alleged in this complaint and the nature and character of the acts performed by defendants in furtherance of the conspiracy;

d.    Whether the alleged conspiracy violated Section 1 of the Sherman Act;

e.    Whether the conduct of defendants, as alleged in this complaint, caused injury to the business and property of plaintiff and other members of the class;

f.    The effect of defendants' conspiracy on the prices of Hawaii shipping services sold during the Class Period; and

g.    The appropriate measure of damages sustained by plaintiff and other members of the class.

55.    Plaintiff is a member of the class, plaintiff's claims are typical of the claims of the class members, and plaintiff will fairly and adequately protect the interests of the members of the class.

CLASS ACTION COMPLAINT

56.    Plaintiff's interests are coincident with and not antagonistic to those of the other members of the class.

57.    Plaintiff is represented by counsel who is competent and experienced in the prosecution of antitrust and class action litigation.

58.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications.

59.    Defendants have acted, and refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

60.    The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

61.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## Trade and Commerce

62.    The activities of defendants, as described in this complaint, were within the flow of, and substantially affected, interstate commerce.

63.    During the time period covered by this complaint, defendants marketed and sold Hawaii shipping services.

64.    Defendants, and each of them, have used instrumentalities of interstate commerce to market and sell Hawaii shipping services.

65.    Defendants have marketed and sold Hawaii shipping services in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which defendants market and sell such services.

## Fraudulent Concealment

66.    Plaintiff had no knowledge of defendants' unlawful self-concealing conspiracy and could not have discovered the contract, combination or conspiracy until April 17, 2008 by the exercise of due diligence because of the deceptive practices and techniques of secrecy

17

1  employed by defendants to avoid detection of, and fraudulently conceal, their contract,
2  combination or conspiracy.

3      67.    Because the contract, combination or conspiracy was kept secret by defendants,
4  Plaintiff was unaware of the anticompetitive conduct concerning of Hawaii shipping services
5  that were secretly agreed upon as alleged herein. It was not until April 17, 2008, the date on
6  which it was disclosed that the Federal Bureau of Investigation executed search warrants on the
7  premises of defendant Horizon, that plaintiff became aware, or could have become aware with
8  the exercise of reasonable diligence, of defendants' anticompetitive conduct.

9      68.    As a result of the fraudulent concealment of the conspiracy, plaintiff asserts the
10  tolling of the applicable statute of limitations affecting the right of action by plaintiff.

11                                  **COUNT I**

12          **Unlawful Price Setting in Violation of Sherman Act § 1, 15 U.S.C. § 1**

13      69.    Plaintiff incorporates by reference as if fully set forth herein the allegations
14  contained in the preceding paragraphs of this complaint.

15      70.    Defendants colluded and agreed in unlawful restraint of trade to fix prices and
16  surcharges and allocate the Hawaii trade routes market.

17      71.    Defendants' unlawful conduct resulted in artificially high supra-competitive
18  prices charged by defendants to plaintiff and the members of the class of direct purchasers of
19  Hawaii shipping services.

20      72.    Plaintiff and members of the class had to pay more for Hawaii shipping services
21  than they would have paid in a competitive marketplace, unfettered by defendants' collusive
22  and unlawful price-fixing.

23      73.    Plaintiffs seek to recover for these overcharge damages.

24      74.    As a direct and proximate result of defendants' scheme, plaintiff and the
25  members of the class have been injured and financially damaged in their respective businesses
26  and property, in amounts which are presently undetermined. Plaintiff's injuries consist of
27  paying higher prices to purchase Hawaii shipping services than it would have paid absent

28
                                      18

1   defendants' conduct. Plaintiff's injuries are of the type the antitrust laws were designed to

2   prevent and flow from that which makes defendants' conduct unlawful.

3 **Jury Trial Demand**

4        Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury of all of the claims

5   asserted in this complaint so triable.

6 **Prayer For Relief**

7     **WHEREFORE**, Plaintiff prays as follows:

8      A.    That the Court determine that this action may be maintained as a class action

9   under Rule 23 of the Federal Rules of Civil Procedure.

10      B.    That the contract, combination or conspiracy, and the acts done in furtherance

11   thereof by defendants, be adjudged to have been in violation of Section 1 of the Sherman Act,

12   15 U.S.C. § 1.

13      C.    That judgment be entered for plaintiff and members of the class against

14   defendants for three times the amount of damages sustained by plaintiff and the class as

15   allowed by law, together with the costs of this action, including reasonable attorneys' fees.

16      D.    That defendants, their affiliates, successors, transferees, assignees, and the

17   officers, directors, partners, agents and employees thereof, and all other persons acting or

18   claiming to act on their behalf, be permanently enjoined and restrained from, continuing to

19   engage in the anticompetitive conduct described herein.

20      E.    That plaintiff and members of the class have such other, further and different

21   relief as the case may require and the Court may deem just and proper under the circumstances.

22   Dated: May 23, 2008                 Respectfully submitted,

                                   **KAPLAN FOX & KILSHEIMER LLP**

23

24

25                              Laurence D. King (SBN 206423)

                             Linda M. Fong (SBN 124232)

                             350 Sansome Street, Suite 400

26                              San Francisco, CA 94104

                             Telephone: (415) 772-4700

27                              Fax: (415) 772-4707

                             Email: lking@kaplanfox.com

28                                 lfong@kaplanfox.com

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAPLAN FOX & KILSHEIMER LLP
Robert N. Kaplan
Linda P. Nussbaum
John D. Radice
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Fax: (212) 687-7714
Email: rkaplan@kaplanfox.com
      lnussbaum@kaplanfox.com
      jradice@kaplanfox.com

CRIDEN & LOVE, P.A.
Michael E. Criden
Kevin B. Love
7301 S.W. 57th Court, Suite 515
South Miami, FL 33143
Telephone: (305) 357-9010
Facsimile: (305) 357-9050
Email: mcriden@cridenlove.com
      klove@cridenlove.com

BOLOGNESE & ASSOCIATES, LLC
Anthony J. Bolognese
1500 JFK Boulevard
Suite 320
Philadelphia, PA 19102
Phone: 215-814-6751
Fax: 215-814-6764
Email: ABolognese@bolognese-law.com

*Attorneys for Plaintiff Acutron, Inc.*

CLASS ACTION COMPLAINT